UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:        Anthony J. Dettore,                    Case No. 15-45642
                                                    Adv. Pro. No. 15-4409
                     Debtor.                        Honorable Thomas J. Tucker
                                                    Chapter 13

_____/

        Anthony J. Dettore,

              Plaintiff (Appellee),

v.                                                  Case No. 15-13986
                                                    Honorable Sean F. Cox

        JEM Real Estate Preferred Fund I, LLC,

              Defendant (Appellant).

_____/

**<u>OPINION & ORDER</u>**

        This is a bankruptcy appeal from a Chapter 13 Adversary Proceeding.  Appellant

Anthony J. Dettore's ("Dettore") brief on appeal relates to the following: (1) the bankruptcy

court's Order converting JEM's motion to dismiss into a motion for summary judgment; (2) the

bankruptcy court's Order Granting Summary Judgment; (3) and the bankruptcy court's

subsequent award of costs to JEM.[1]

        The parties have briefed the issues and the Court entertained oral argument on September

8, 2016.  For the reasons set forth below, the Court shall **AFFIRM** the Bankruptcy Court's

decisions.

---

[1] In addition to these orders, Dettore's Amended Notice of Appeal also identifies the
bankruptcy court's subsequent Order Denying Plaintiff's Motion for Reconsideration.  However,
Dettore's brief on appeal is silent as to this issue.

1

## BACKGROUND

Dettore is a resident of Michigan.  Appellee JEM Real Estate Preferred Fund I, LLC, ("JEM") is a Delaware limited liability company with its principal place of business in Ohio. JEM is in the business of providing loans for real estate investments.  (Ex. 1 to JEM's Br. at Pg ID 1164, Brown Aff. ¶ 3).

### Events Giving Rise To Instant Appeal – The Parties' Financial Relationship[2]

On or around July 2013, Dettore retained the services of a loan broker called DoHardMoney.com ("DHM").  (Ex. 1 to JEM's Br. at Pg ID 1169).  Dettore was seeking to obtain a loan to finance the purchase, rehabilitation and subsequent sale of real property located at 472 Starkweather St., Plymouth, MI 48170 (the "Starkweather Property").  DHM consequently contacted JEM on Dettore's behalf, stating that Dettore was seeking to finance a "fix and flip" in relation to certain real property.  (Ex. 1 to JEM's Br. at Pg ID 1169).  JEM was advised that Dettore had previously completed two rehabilitation and sell projects.  (*Id*.).

On July 19, 2013, Joseph Brown (managing member of JEM) held a conference call with Dettore and DHM, during which Dettore reaffirmed what DHM had initially communicated to JEM.  (Brown Aff. ¶ 6).  On July 22, 2013, Dettore and DHM executed a letter of intent, setting forth the proposed loan terms that DHM had arranged with JEM for Dettore's purchase, rehabilitation and resale of the Starkweather Property.  (Brown Aff. ¶ 7; Ex. 1 to JEM's Br. at Pg ID 1176-80).

---

[2] At all times relevant to the parties' financing relationship, Dettore was working with a number of professional advisors.  Specifically, Debtor's advisors consisted of: Jack Wolfe, of The Wolfe Group, LLC; Lawrence Glasser, of LVG Enterprises, and attorney Stuart Sandweiss, of the Sandweiss Law Center.  (*See* Ex. 1 to JEM's Br.; *see also* Pg ID 1164, Brown Aff. ¶ 11).

To evidence the financing arrangement between JEM and Dettore, Dettore executed the following documents: (1) a Promissory Note, dated August 29, 2013[3]; (2) an Open End Mortgage and Security Agreement, dated August 29, 2013[4]; (3) a Guaranty, dated August 29, 2013[5]; (4) an Environmental Indemnity Agreement, dated August 29, 2013[6]; (5) a Declaration of Non-Owner Occup[a]ncy, dated August 29, 2013[7]; and (6) an Assignment of Leases and Rents. (collectively, "Loan Documents").

### a.      Dettore's Obligations Under The Loan Documents

Pursuant to the Promissory Note, Dettore had obtained a loan in the principle amount of $191,570.23. Interest was payable at a rate of 18% per annum from August 29, 2013 to August 31, 2013, and then at a rate of the greater of 18% per annum or the Prime Rate plus 13 basis points until the maturity date of February 29, 2014. (Promissory Note at Pg ID 1284). In the event of a default, Dettore agreed to pay a "Default Rate" of 25% per annum subject to the "Maximum Rate." (*Id*. at Pg ID 1283). The "Maximum Rate" was defined as the "highest lawful rate permitted under applicable usury law." (*Id*. at Pg ID 1286). The Promissory Note also contained the following choice of law provision: "[t]his Note shall be governed by the laws of the State of Ohio without regard to choice of law consideration." (*Id*. at Pg ID 1288).

The Promissory Note was secured by the Mortgage on the Starkweather Property.

---

[3] Ex. 8 to JEM's Br. at Pg ID 1283-1291, Promissory Note.

[4] *Id*. at Pg ID 1293-1342, Mortgage.

[5] *Id*. at Pg ID 1344-1352.

[6] *Id*. at Pg ID 1354-1364.

[7] Ex. 1 to JEM's Br. at Pg ID 1366-1367.

3

(Mortgage, at Pg ID 1293).  Section 6.24 of the Mortgage also contained a choice of law provision, stating that the mortgage and its obligations shall be governed by the laws of the State of Ohio, except that the provisions for the foreclosure of liens and security interests created in the mortgaged property under the loan documents shall be governed by Michigan law.  (*Id*. at Pg ID 1337).  In the event of a default, the Mortgage provided that JEM was entitled to foreclose on the Starkweather Property and it granted JEM the "power of sale," as necessary under M.C.L.600.3204.  (*Id*. at Pg ID 1314).

  In the Declaration of Non-Owner Occupancy, Dettore acknowledged that he had applied for a business commercial loan in the amount of $191,570.23.  (Ex. 2 to JEM's Br., Non-Owner Occ. Decl.).  Dettore further represented that: (1) the Starkweather property was unoccupied; (2) that he had no intention to occupy the property; (3) that he had no intention of making the property his principle residence; and (4) that if he did occupy the property, Dettore would be in default.

### b.      Dettore's Default

Sometime after February 2014, Dettore allegedly moved into the Starkweather Property. Dettore additionally failed to pay the obligation due under the Note upon the maturity date of February 29, 2014.

### c.      Starkweather Property Foreclosure

On August 21, 2014, JEM initiated foreclosure by advertisement on the Starkweather Property.  (Ex. 4 to JEM's Br.).  A Sheriff's Sale subsequently took place on October 9, 2014. (Ex. 6 to JEM's Br.).  At the Sheriff's Sale, JEM was the highest bidder, with a full credit bid of $273,836.32.  (*Id*.).

4

**Bankruptcy & Adversary Proceeding**

On April 9, 2015, Dettore filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan.  The action was assigned to the Honorable Thomas J. Tucker, United States Bankruptcy Judge, and was assigned as Case No. 15-45642.  On May 5, 2015, Dettore instituted an adversary proceeding before Judge Tucker, assigned as Case No. 15-04409.  ("Adv. Pro.")

Dettore's Adversary Complaint was filed in relation to the Starkweather Property transaction described above.  Specifically, Dettore alleged that JEM acted in violation of the following two Michigan statutes: (1) the Mortgage Brokers, Lenders and Servicers Licensing Act, M.C.L. 445.1651; and (2) the Usury Act, M.C.L. 438.31.  (Adv. Pro. Doc. #1, Adv. Compl.).  The complaint additionally sought injunctive relief based upon JEM's alleged violations.

**a.      Bankruptcy Court's Order Regarding Motion to Dismiss**

On June 3, 2015, JEM filed a motion to dismiss the adversary proceeding, arguing that Michigan's Mortgage Brokers, Lenders and Servicers Licensing Act and Michigan's Usury Act were inapplicable.  (Adv. Pro. Doc. #11).   Dettore filed objections to the motion on June 17, 2015.  (Adv. Pro. Doc. #13).

On July 13, 2015, the bankruptcy court held an on-the-record Rule 26 Conference.  (Adv. Pro. Doc. #85, Rule 26 Conf. Transcript).  At the conference, the parties were advised that the bankruptcy court intended to convert JEM's Rule 12(b)(6) motion into a Rule 56 motion because the motion included a document outside of the pleadings, *i.e.* the "Declaration of Non-Owner Occup[a]ncy."  (Rule 26 Conf. Transcript, at 13).  Neither party objected.  (*Id.*).  The bankruptcy

5

court then allowed counsel for both parties to choose the dates in which any supplemental materials would be due.  (*Id*. at 16-17).  JEM's counsel chose July 20, 2015, one week from the date of the conference, while Dettore's counsel[8] chose August 3, 2015, approximately three weeks from the date of the conference.  (*Id*. at 17).  An "Order Regarding [JEM's] Motion to Dismiss" was subsequently entered, recounting what was established at the Rule 26 conference. (Adv. Pro. Doc. #17).

### b.  Bankruptcy Court's Bench Opinion & Subsequent Order Granting Summary Judgment for JEM on All Counts

Oral argument as to JEM's motion was held on October 21, 2015.[9]  At the hearing, the bankruptcy court issued a bench opinion dismissing each of Dettore's claims.  (Adv. Pro. Doc. #86, Bankr. Opinion Transcript).  First, the bankruptcy court noted that while Dettore filed a timely supplemental response, he did not include or file any new supplemental *evidence*.  (Bankr. Opinion Transcript, at 39).

With respect to Count One, the bankruptcy court held that JEM did not violate the Mortgage Brokers Lender and Services Licensing Act because the proceeds of the loan transaction at issue were not used primarily for a personal, family, or household purpose. The

---

[8] At this time, Dettore was represented by Scott Kappler, who was standing in for Dettore's attorney, Larry Gadd.  Kappler advised the bankruptcy court that Dettore had communicated with another attorney, Stuart Sandweiss, who would be substituting in for Gadd in the near future. (Rule 26 Conf. Transcript at 5-6).

[9] The bankruptcy court allowed Dettore to speak at the hearing, however it clearly indicated that any statements made would not be considered as part of the record, noting that the time to supplement the record had long passed.  (Bankr. Opinion Transcript, at 33-34).  Dettore disputed the contents of the Declaration of Non-Owner Occupancy.  Specifically, Dettore asserted that he had no choice but to sign the declaration two days before closing and that it was his intent to live in the house.

6

bankruptcy court pointed to the following undisputed evidence in support of its conclusion: (1) the affidavit of Joseph Brown, of JEM; and (2) the Declaration of Non-Owner Occupancy, which Dettore undisputedly signed.

With respect to Count two, the bankruptcy court determined that Michigan's Usury Act did not apply to the loan transaction at issue. (*Id*. at 58-59). In so holding, the bankruptcy court pointed out that the parties had agreed in their Loan Documents that Ohio law applied to the issue of usury. The bankruptcy court rejected Dettore's argument that the choice of law provision should be disregarded because Dettore was a Michigan resident and the Starkweather Property was located in Michigan. The bankruptcy court noted that JEM (the lender) was located in Ohio. (*Id*. at 57). Accordingly, the funds were provided to Dettore from a lender located in Ohio, which creates a substantial relationship between Ohio (the law whose state was chosen by the parties' agreement) and the transaction. (*Id*.). The bankruptcy court further held that Ohio had a great interest in the application of its law of usury with respect to loans made by its residents. (*Id*. at 58).

With respect to Count Three, the bankruptcy court held that because this count sought injunctive relief based on the first two counts in the complaint, summary judgment as to Count Three was also appropriate.

The bankruptcy court entered an Order Granting Summary Judgment for JEM on All Counts, incidental to its bench opinion. (Adv. Pro. Doc. #47).

**c.     Bankruptcy Court's Order Denying Dettore's Motion for**

7

<b>Reconsideration</b>

On November 4, 2015, Dettore filed a Motion for Reconsideration[10].  (Adv. Pro. Doc.

#51).  In it, Dettore argued that the bankruptcy court "paplably erred in ruling on the choice of

law provision in the contract between the parties as allowing a foreign corporation to conduct

loan sharking in Michigan is against Michigan public policy."  (*Id*. at 12).  In support of its

motion, Dettore attached his own affidavit, which was taken *after* the bankruptcy court issued its

bench opinion and subsequent order granting summary judgment.

On November 5, 2015, the bankruptcy court filed an Order denying Dettore's

reconsideration motion.  (Adv. Pro. Doc. #53).  In so doing, the bankruptcy court held that: (1)

Dettore failed to demonstrate a palpable defect by which the court or parties were misled; (2) the

allegations and arguments in the motion do not demonstrate any valid ground for altering the

court's summary judgment order; and (3) the motion is flawed because it relies on

arguments/evidentiary material presented for the first time with the motion and because it relies

on facts that are supported by no evidence in the record.

> **d.    Bankruptcy Court's Judgment Allowing and Taxing Costs of $572.69 in JEM's Favor and Against Dettore**

On October 29, 2015, JEM filed a Bill of Costs.  (Adv. Pro. Doc. #49).  On November

12, 2015, Dettore filed a corrected objection to the Bill of Costs.  (Adv. Pro. Doc. #60).

The bankruptcy granted JEM's Bill of Costs to the extent that JEM sought $572.69 in

costs incident to taking of depositions and it denied it to the extent that JEM sought $22.50 in

fees and disbursements for printing.  (Adv. Pro. Doc. # 69).

---

[10] At this stage in the proceedings, Dettore was represented by new counsel, Stuart Sandweiss.  Sandweiss is also the attorney representing Dettore in the instant appeal.

8

### e.     Dettore's Amended Notice of Appeal[11]

On November 30, 2015, Dettore filed an Amended Notice of Appeal, wherein he appealed from the following: (1) October 21, 2015, Order Granting Summary Judgment; (2) subsequent Order Denying Motion for Reconsideration; (3) subsequent November 25, 2015 Judgment Allowing and Taxing Costs; and (4) all prior interlocutory orders, including the bankruptcy court's Order Regarding JEM's Motion to Dismiss.  (Adv. Pro. Doc. #72).

## APPLICABLE STANDARDS

In order to determine the applicable standards of review, the Court must determine which of the bankruptcy court's orders have been properly appealed by Dettore.  While Dettore's Amended Notice of Appeal includes an appeal from the bankruptcy court's order denying the motion for reconsideration, Dettore's brief on appeal is silent as to this issue.  Dettore's brief specifically addresses the following orders: (1) the bankruptcy court's order converting JEM's Rule 12(b)(6) motion into a Rule 56 motion; (2) the bankruptcy court's order denying summary judgment; and (3) the bankruptcy court's judgment allowing and taxing costs.  The Court shall limit its analysis to the issues presented in Dettore's appeal.  Any argument against the bankruptcy court's order denying Dettore's motion for reconsideration has been waived on appeal.  *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs on appeal may be

---

[11] Dettore initially filed a Notice of Appeal on November 12, 2015, which was assigned to this Court as case number 15-13986.  However, after the bankruptcy court entered its judgment allowing and taxing costs, Dettore filed an Amended Notice of Appeal to include an appeal from the judgment order.  Dettore's Amended Notice of Appeal was treated as a separate appeal by the bankruptcy court.  It was assigned to this Court as case number 15-14209.  This Court has since consolidated the cases and the lead case is now 15-13986.

deemed waived.").

The bankruptcy court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment is reviewed for abuse of discretion. *Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

To the extent that Dettore appeals from the bankruptcy court's order granting summary judgment, this Court reviews findings of fact under a clear error standard and conclusions of law under a de novo standard. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997). A factual finding is clearly erroneous when "the reviewing court is left with a definite and firm conviction that a mistake has been committed." *United States v. Aven*, 997 F.2d 1150, 1152 (6th Cir. 1993). "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson*), 371 B.R. 798, 800 (6th Cir. BAP 2007).

Dettore's appeal from the bankruptcy court's judgment awarding taxing costs is reviewed for an abuse of discretion. *Soberay Mach. & Equip. Co., v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir. 1999).

## ANALYSIS

### A.    The Bankruptcy Court's Conversion Of JEM's Rule 12(b)(6) Motion Into A Rule 56 Motion Does Not Constitute An Abuse Of Discretion

On appeal, Dettore first argues that the bankruptcy court erred when it converted JEM's Rule 12(b)(6) motion into a Rule 56 motion. (Dettore's Br. at 24). Specifically, Dettore asserts that the bankruptcy court's conversion "prejudiced Dettore as he lacked sufficient time to conduct any meaningful discovery that was needed to refute JEM's allegations." (*Id.*). This

10

argument is without merit.

Federal Rule of Civil Procedure 12(d) provides that if, in a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "In the Sixth Circuit, before a district court may convert the motion *sua sponte*, the 'district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (quoting *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984)). "Despite this 'clearly established rule,' an appeals court will reverse for failure to notify only if the losing party can 'demonstrate prejudice.'" *Id.* (quoting *Yashon*, 737 F.2d at 552).

The obvious flaw in Dettore's argument is that, here, the parties were put on notice of the bankruptcy court's decision to convert JEM's motion into one for summary judgment. In fact, the bankruptcy court asked if either party had any issue with the conversion, to which Dettore's counsel stated that he had none. Specifically, Dettore's counsel stated that had no objection to the procedure outlined by the bankruptcy court because it would provide Mr. Sandweiss (Dettore's incoming counsel) the opportunity to submit a supplemental brief. (*Id.* at 15). The bankruptcy then afforded both parties the opportunity to choose when supplemental materials would be due. Dettore's counsel personally chose August 3, 2015 – approximately three weeks after the Rule 26 status conference. (*Id.* at 16-17).

Dettore should not be able to now argue that this self-imposed deadline was unreasonable, especially given that he failed to express this concern to the bankruptcy court.

11

Moreover, Dettore has failed to support his position with any applicable law (*i.e.* Dettore has not

cited a single case that supports reversal in situations where, as here, the lower court afforded the

parties notice and afforded the parties the opportunity to choose their own deadlines).  Nor has

Dettore even attempted to explain how he has been prejudiced by this deadline.

Accordingly, the Court finds that the bankruptcy court's decision to convert JEM's

motion to dismiss into a motion for summary judgment does not amount to an abuse of

discretion.

**B.      The Bankruptcy Court Correctly Granted Summary Judgment In JEM's Favor On Dettore's Claim That JEM Violated Michigan's Usury Act (Count II)[12]**

As a threshold matter, the Court notes that Dettore's appeal brief offers certain evidence

and advances certain arguments that were not before the bankruptcy court at the summary

judgment stage.  Instead, these arguments were first advanced by Dettore in his motion for

reconsideration.  As the bankruptcy court correctly held, however, arguments raised for the first

time in a motion for reconsideration are untimely, waived and forfeited on appeal.  (Adv. Pro.

Doc. #53).

Thus, to the extent that Dettore now raises arguments that were not timely before the

bankruptcy court at the summary judgment stage, these arguments are waived on appeal and

should not be considered by the Court.  *See Am. Meat Inst. v. Pridgeon*, 742 F.2d 45, 47 (6th Cir.

1984) (finding that an issue raised for the first time in a motion to reconsider issuance of

injunction was untimely and thus waived on appeal).  Also attached to Dettore's appeal brief is

Dettore's own affidavit, taken *after* the bankruptcy court ruled on the motion for summary

---

[12] Because Dettore's brief fails to take issue with the bankruptcy court's disposition of
Counts I and III, these issues are waived. *See Farm Labor*, 308 F.3d at 544 n.8.

judgment.  To the extent that Dettore relies on this post-judgment affidavit, he may not do so.

### 1.      Dettore's Arguments On Appeal

Dettore takes issue with the bankruptcy court's dismissal of Count II of his complaint - the Usury Act claim.  Specifically, Dettore argues that: (1) the bankruptcy court erred by recognizing the parties' Ohio choice-of-law provision because the transaction at issue took place in Michigan, regarding real property located in Michigan, involving a single family dwelling and an individual borrower located in Michigan; and (2) that the bankruptcy court erred by failing to recognize that the underlying 42-44% of interest constitutes loan sharking that violates Michigan public policy and the wrongful conduct rule, rendering the usurious contract void.

Dettore's choice-of-law argument was properly preserved for appeal because it was advanced before the bankruptcy court at the summary judgment stage.  However, to the extent that Dettore now argues that the instant loan agreement constitutes loan sharking and violates public policy and the wrongful conduct rule, this argument was not timely presented to the bankruptcy court.  Dettore first presented this argument in his post-judgment motion for reconsideration.  As explained above, this argument is waived on appeal.

As such, the only argument properly before the Court on appeal is Dettore's argument as to the parties' Ohio choice-of-law provision.

### 2.      The Bankruptcy Court Correctly Upheld The Parties' Choice-of-Law Provision

Dettore asserts that the bankruptcy court erred when it determined that *Midwest Business Credit, LLC v. Ttod Liquidation, Inc*., 2012 WL 12268402 was persuasive authority in support of upholding the parties' Ohio choice-of-law provision.  Dettore argues that the facts in *Midwest* are distinguishable from the facts at issue here.  The Court disagrees and finds the facts in

13

*Midwest* analogous and instructive as to the issue of choice-of-law.  As such, the Court DENIES Dettore's request to reverse the bankruptcy court's order granting summary judgment.

The loan agreement at issue in *Midwest* contained an Illinois choice-of-law provision. The loan agreement further provided that upon default, the interest rate charged would be the lesser of 23% a year, or the highest rate permitted under Illinois law.  *Midwest*, 2012 WL 12268402 at *1.  Similar to the interest at issue here, the interest charged in *Midwest* violated Michigan's usury laws.  The Michigan Court of Appeals upheld the parties' Illinois choice-of-law provision despite the fact that the charged interest rate constituted criminal usury.  *Id.* at *4. The Court finds that *Midwest* supports the decision to uphold the choice-of-law provision here despite the fact that the charged interest may not be permitted under Michigan law.

### Choice-of-Law Factors

It is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions."  *Turcheck v. Amerifund Financial, Inc*., 272 Mich. App. 341, 345 (2006).  Michigan courts will traditionally uphold a choice-of-law provision contained in a contract, unless: (1) the chosen state lacks a substantial relationship to the parties or the transaction; (2) there is no reasonable basis for adopting the law of the chosen state; or (3) it "would be contrary to a fundamental policy of [Michigan] which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties."  *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 448 Mich. 113, 126 (1995) (quoting Restatement Conflict of Laws, 2d, § 187(2)(b)).

### a.    Ohio Has A Substantial Relationship To The Parties Or Transaction

14

The first factor to consider when determining whether or not to honor a choice-of-law provision is whether the chosen state has a substantial relationship tot he parties or transaction.

In upholding the parties' choice-of-law provision, the court in *Midwest* first reasoned that the chosen state of Illinois had a substantial relationship to the parties and the transaction because: " (1) the debtor contacted Midwest in Illinois, which is its principal place of business, in order to obtain the Midwest loan; (2) some of the direct negotiations occurred in Illinois; (3) the debtor sent all loan documents and payments to Midwest at its Illinois office; (4) the loan documents were executed in Illinois; (5) the loan was underwritten in Illinois; and (6) the funds were transferred to the debtor from an Illinois account." *Id.* at *3.

For reasons similar to those advanced by the court in *Midwest*, the Court finds that Ohio has a substantial relationship to the parties or the transaction here because: (1) JEM is a lender, who at all relevant times resided and was located in Ohio; (2) JEM was contacted in Ohio on Dettore's behalf, who, at all relevant times, was a resident of Michigan; (3) Dettore was seeking a loan, which would be funded by an Ohio lender; (4) the Loan Documents were prepared by JEM in Ohio; and (5) the loan documents were sent to Dettore from Ohio.  The fact that Dettore did not physically travel to Ohio to negotiate and execute the Loan Documents is not outcome determinative here.

### b.      There Exists A Reasonable Basis For The Parties To Adopt Ohio Law

The second factor requires courts to determine whether or not a reasonable basis exists for the parties to adopt the law of the chosen state.  In *Midwest*, the Court reasoned that "[i]f there is an exception under Illinois law for charging what has otherwise been defined as a 'usurious' interest rate on business loans to LLCs, then there exists a reasonable basis for the

parties to adopt Illinois law, as doing so would permit Midwest to charge a higher interest rate than permitted under Michigan law." *Midwest*, 2012 WL 12268402, at *3.

Similarly, here, there exists an exception under Ohio law for charging interest at a rate in excess of the maximum rate when a loan exceeds $100,000. Thus, based upon the court's reasoning in *Midwest*, there exists a reasonable basis for the parties to adopt Ohio law, "as doing so would permit [JEM] to charge a higher interest rate than permitted under Michigan law." *Id.* Dettore's argument to the contrary–that there exists no reasonable basis to adopt Ohio law other than to attempt to protect JEM–is made without any substantive analysis.

### c. Michigan Does Not Have A Materially Greater Interest Than Ohio In The Particular Issue Of Usury

The third factor requires the Court to consider whether adopting Ohio law would be contrary to a fundamental policy of Michigan, which has a materially greater interest than Ohio in the determination of the particular issue of usury. Any argument by Dettore that this factor weighs in his favor is not persuasive.

To determine the fundamental policy of a certain state, the court in *Midwest* advised that "'[a] fundamental policy may be embodied in a statute which (1) makes one or more kinds of contracts illegal or (2) which is designed to protect a person against the oppressive use of superior bargaining power." *Id.* at *4 (quoting *Martino v. Cottman Transmission Sys., Inc*., 218 Mich. App. 54, 60-61 (1996)).

The court reasoned that Michigan's policy concerns regarding usury were not implicated because the creditor was sought out by the debtor (a sophisticated commercial entity) and that the debtor was fully aware of what it was getting into when it negotiated and agreed to the terms of the loan. *Id.* The court further noted that even if the loan at issue was usurious, there exists a

16

difference between a criminally usurious loan agreement and an illegal contract – only the latter of which is unenforceable in its entirety.  *Id.* at n. 4.

To support his position that Ohio law would violate Michigan public policy, Dettore attempts to distinguish *Midwest* from the case at bar by arguing that, "unlike the current case, in *Midwest*, both parties were LLCs and the transaction was clearly a commercial transaction 'between business entities.'" (Dettore's Br. at 30).  Dettore further argues that JEM made use of superior bargaining power because Dettore had already expended $20,000 into the deal and because Dettore was facing eviction and had nowhere else to go.  (*Id*. at 31).  Dettore concludes that "it would be contrary to Michigan public policy to allow a Michigan citizen to be subject to a 43% interest rate regarding a sing-family residence, which is illegal pursuant to MCL §438.41..." (*Id*. at 30-31).

Dettore's argument is without merit.  First, the fact that both parties in *Midwest* were LLCs has no bearing on the Court's analysis here.  Despite Dettore's assertions to the contrary, there is no evidence that JEM made use of any superior bargaining power.  Here, Dettore was being advised by a number of individuals throughout the financial transaction at issue.  This is evidenced by numerous emails attached to JEM's supplement to its motion to dismiss.  (*See* Ex. 1 to JEM's Resp. at Pg ID 1194-1223).  In fact, all closing documents were reviewed on Dettore's behalf prior to signing by Jack Wolfe, Dettore's consultant.  Thus, Dettore was fully aware of the terms of the loan agreement prior to entering into it.  Moreover, Dettore appears to be conflating a criminally usurious contract with an illegal one.  *See Midwest*, 2012 WL 12268402 at, *4 n. 4.

And finally, Dettore has not explained why Michigan has a materially greater interest

than Ohio as to the issue of usury. Dettore's focus has been on why applying Ohio law violates Michigan public policy. However, even if application of Ohio law violates public policy, this, on its own, would be insufficient to reject the parties' choice of law. This is because the public policy exception only applies where the chosen law is contrary to the fundamental policy "*of a state which has a materially greater interest* than the chosen state in the determination of the particular issue..." *Chrysler Corp.*, 448 Mich. at 126 (internal citations and quotations omitted) (emphasis added). To put it differently, the conflict between Michigan and Ohio public policy is only relevant if Michigan has a materially greater interest than Ohio in determining the usury issue. *Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2009).

Here, Michigan does not have a "materially greater interest" in the issue of usury than Ohio. While Michigan has an interest in protecting its residents from usurious interest rates, Ohio has an equally strong–or stronger–interest in protecting its residents. Moreover, just as in *Midwest*, Ohio "arguably has a strong interest in seeing its contracts enforced according to its own laws, particularly when out-of-state debtors seek funding from its in-state creditors." *Midwest*, 2012 WL 12268402 at, *4.

## C.    The Bankruptcy Court Judgment Awarding Taxing Costs Does Not Constitute An Abuse Of Discretion

In his final argument on appeal, Dettore asserts that the bankruptcy court abused its discretion by awarding Defendant $572.49 in costs for an unnecessary deposition that was not filed or used. (Dettore's Br. at 37). In making this argument, Dettore fails to cite a single case in support. Moreover, Dettore's analysis disregards the law as it applies to this issue. For the reasons below, the Court DENIES Dettore's request to reverse the bankruptcy court's judgment.

At issue here are the depositions of Lawrence Glasser and Jack Wolfe. JEM took these

18

depositions after the deadline had passed for the parties to submit supplemental material to support the summary judgment motion, but before the October 31, 2015 discovery cut-off date set by the bankruptcy court's scheduling order.

On October 29, 2015, JEM filed a Bill of Costs, asking the bankruptcy court to tax the following as costs: (1) a total of $22.50 in fees and disbursements for printing; and (2) a total of $572.69 for costs incident to taking of depositions. (Adv. Pro. Doc. #49). Dettore objected to the Bill of Costs, arguing that the depositions were not necessarily obtained for the case because they were not used or filed. (Adv. Pro. Doc. #60).

JEM responded, stating that the depositions were necessitated by Dettore's frivolous allegations as well as the October 31, 2015 discovery cut-off date under the scheduling order. (Adv. Pro. Doc. #68). Specifically, JEM explained that the depositions were necessitated by Dettore's baseless claims that the loan between JEM and Dettore was for a "consumer" purpose. (*Id*. at 2; *see also* JEM's Br. at 25).

JEM also pointed out that the hearing on the summary judgment motion was scheduled for October 21, 2015 and that discovery cut-off date under the bankruptcy court's scheduling order was set to expire on October 31, 2015. (*Id*. at 2-3; *see also* JEM's Br. at 25-26). Because "there was no assurance that the [bankruptcy court] would dismiss [Dettore's] Adversary Proceeding at the October 21, 2015 hearing," JEM argues that it necessarily had to complete the deposition and all other discovery prior to October 31, 2015. (*Id*. at 3; *see also* JEM's Br. at 25-26).

The bankruptcy granted JEM's Bill of Costs to the extent that JEM sought $572.69 in costs incident to taking of depositions and it denied it to the extent that JEM sought $22.50 in

fees and disbursements for printing.  (Adv. Pro. Doc. # 69).  The bankruptcy court concluded that the depositions were reasonably necessary for the litigation at the time of taking.  (*Id*.).

Pursuant to Fed. R. Bankr. P. 7054, "[t]he court may allow costs to the prevailing party except when a statute of the United States or [the Federal Rules of Bankruptcy Procedure] otherwise provide[]."  Fed. R. Bankr. P. 7054 (b)(1).  Relatedly, 28 U.S.C. § 1920 provides that a judge or clerk may tax, among other things, fees for printed or electronically recorded transcripts necessarily obtained for use in the case.

While 28 U.S.C. § 1920 does not specifically provide for deposition costs, both parties appear to agree that deposition expenses–reasonably necessary for litigation–may be taxed as costs.  *See Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989) ("Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party").  "Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling."  *Id.* (internal citations omitted).

Dettore's arguments in support of reversal are baseless and fail to demonstrate how the bankruptcy court abused its discretion here.  Essentially, Dettore is arguing that because JEM failed to file the depositions with the bankruptcy court, JEM must have had something to hide. Dettore further argues that JEM's argument regarding the October 31, 2015 discovery cut-off is "disingenuous as the bankruptcy court heard the motion on October 21, 2015 and thus, if the bankruptcy court denied the motion, JEM still had time to take the depositions or move the court for additional time."  (Dettore's Br. at 38).

Dettore's argument presumes that JEM had advance knowledge of the bankruptcy court's decision to rule from the bench.  Dettore's argument further presumes that the bankruptcy court

would have allowed for "additional time" upon JEM's request.  Because there was no absolute

assurance that the bankruptcy court would dismiss the complaint, the depositions were

necessarily obtained to prepare for the possibility of trial.

### CONCLUSION & ORDER

For the foregoing reasons, **IT IS ORDERED** that the bankruptcy court's decisions are

**AFFIRMED**.

**IT IS SO ORDERED**.

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  September 12, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 12, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy___
Case Manager